# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KAMAL BROWN,

       Petitioner,

                                       Case No. 06-CV-13051

v.                                          Hon. Lawrence P. Zatkoff

WILLIE O. SMITH,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

**I.      Introduction**

Michigan prisoner Kamal Brown ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court. He was sentenced to 35 to 50 years imprisonment on the murder conviction, a concurrent term of one and one-half to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2003.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, a police witness's reference to a polygraph examination, the trial court's refusal to admit a letter, prosecutorial misconduct, and the effectiveness of trial counsel. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## II.    Facts and Procedural History

Petitioner's convictions arise from the death of Mario Smith in Detroit, Michigan, on November 30, 2002.  On direct appeal, Petitioner set forth the relevant trial testimony as follows:

> Chavez Smith testified that he was acquainted with [Petitioner] in the neighborhood for one and one-half to two years, and the decedent was a friend for about the same period of time.  The decedent worked at Skateland, located at Alter Road and Chalmers.  On November 30, 2002, Smith observed [Petitioner] walking toward Skateland as the decedent was removing trash from the building.  According to Smith, the decedent hugged a girl. [Petitioner] became angry.  [The] two argued over the girl. [Petitioner] then entered the driver's seat of a green car occupied by two other person[s] and drove away. [Petitioner] was wearing a black hooded sweatshirt.  Smith walked to a restaurant three blocks away at Marlborough and Warren.  The decedent began to walk down Frankfort toward Chalmers.  Smith remained at the restaurant approximately 45 minutes smoking marijuana.  He then walked along Marlborough toward Frankfort.  As he returned, he saw the decedent standing on the corner of Chalmers and Frankfort with Adrian Walker.  The same green car approached on Chalmers, stopping at Frankfort.  The same three persons were inside. [Petitioner], the driver, point[ed] a nickel plated handgun from the window of the vehicle.  The decedent ran.  Minutes later, Smith heard four to six shots fired.  Walker fell to the ground.  Smith ran to a friend's home and said nothing about the shooting.  Months later, after he was arrested for a home invasion, Smith told the police about his observations.  He denied receiving any benefit in exchange for his testimony, and stated that prior inconsistent statements maintaining that he had not seen the shooting were due to threats from [Petitioner].  He further stated that he had seen [Petitioner] with a nickel plated revolver days before the shooting.  Smith acknowledged prior convictions for home invasion and motor vehicle theft.

> Detroit Police Officer Randy Randolph was on patrol in the area.  He was familiar with Skateland and Mario Smith, who worked there.  He arrived at 8:45 to 8:50 p.m. for the 9:00 p.m. closing to see that it took place in an orderly fashion.  Sometime between 8:55 and 9:05, he observed Smith leave the premises.  He remained at Skateland until 9:35, when he was dispatched to a shooting at Frankfort and Chalmers, less than a mile away.  There he observed Smith lying on his back with a single gunshot wound to the left side of his chest.  No other persons [were] in the area.  Randolph surveyed the area for spent shell casings, finding none.  Given the time he last saw Smith and the time it takes for someone to observe the victim and call 911, for 911 to call the dispatcher, and for the dispatcher to call Randolph, the shooting would have taken place sometime between 9:05 and 9:30 or roughly 25 to 30 minutes after Randolph saw Smith leave Skateland.

> Adrian Walker testified that he had known Mario Smith four years and was aware that Smith worked at Skateland.  At 8:45 p.m. November 30, 2002, he saw Smith as they were leaving Skateland.  According to Walker, a person in a green car tried to persuade Smith to enter the vehicle.  Smith refused.  The vehicle left and Smith

2

continued walking. At 9:05, Walker proceeded to a nearby gas station to call his grandmother for a ride. He observed the green car at the station. He identified [Petitioner] as the passenger, and stated that [Petitioner] exited the vehicle, that a handgun fell from the right pocket of [Petitioner's] hooded sweatshirt, and that [Petitioner] picked up the gun and returned it to the pocket from which it fell. Walker placed his call and returned to Skateland to await his ride. Along Frankfort approaching Chalmers, he observed a person a block ahead. The person was wearing a coat like the one he had observed Smith wearing earlier. The green car similar to the one he had seen at the gas station approached the person. A person exited the passenger side of the vehicle and fired one shot at the pedestrian. Walker ran back in the direction of Skateland. The green car [] drove away toward Chandler Park. Walker denied making earlier inconsistent statements to the police that [Petitioner] was the driver of the car and that it was the same car that would drive Smith home from work every Saturday night.

Detroit Police Officer Lori Briggs is an evidence technician. On November 30, 2002, she responded to 5240 Chalmers. The body had already been removed. She looked for bullet casings on Chalmers, Frankfort, Warren, and Southampton. She found none, indicating to her that the weapon used may have been a revolver. She conceded that shells from an automatic weapon could have stayed within the shooter's car. Briggs observed some blood at 5201 Chalmers but no trail. She sketched a diagram of the scene, but collected no evidence.

Denise Smith is the mother of Mario Smith. She received information from the Detroit Police and proceeded to St. John's Hospital. When she arrived, her 16-year-old son was already dead. She identified him at the office of the Wayne County Medical Examiner. She stated that he would walk to and from work, traveling in any one of three different routes, and that he never received a ride home in a green car.

Detroit Police Officer Lonzie Reynolds was the officer in charge of the case. On April 1, 2003, he received information from Chavez Smith that the murder weapon was located in a brown leather bag in [Petitioner's] father's bedroom closet. That day, Reynolds obtained and executed a warrant to search that location. He found such a bag in that location, but it did not contain a weapon. Reynolds stated that on December 2, 2002, and January 25, 2003, Adrian Walker was interviewed by the police and stated that he did not see the shooting and that when he was at the gas station, he observed a gun fall from the coat pocket of a person wearing a red leather jacket. On April 11, 2003, Reynolds showed a picture of [Petitioner] to Walker, who identified [Petitioner] as the driver of the green vehicle. In commenting on the information received from Chavez Smith, Reynolds referred to a polygraph examination Smith had taken.

Dr. Carl Schmidt is a forensic pathologist employed by the office of the Wayne County Medical Examiner. The parties stipulated that he is an expert in that field. Dr. Schmidt testified that on December 1, 2002, he performed an autopsy on the body of Mario Smith. Schmidt determined that Smith died of a single gunshot would to the chest, which was recovered. There was no evidence of close range firing,

indicating that the weapon was discharged from a distance greater than four feet away. The person could have [gone] some distance after sustaining the injury, which may or may not have left a blood trail. He classified the manner of death as homicide.

***

[Petitioner] then testified that he never had a weapon, that he never displayed a weapon to Chavez Smith, that he never threatened Chavez Smith, and that he had nothing to do with the death of Mario Smith. [Petitioner] stated that he did not know Chavez Smith or Adrian Walker, and that he had not been to Skateland for several years because he was 20 years old, which exceeds the age limit for the teen venue. He acknowledged that he was on probation for receiving and concealing stolen property, and that he was likely with his girlfriend or other friends at the time.

Defendant-Appellant's Brief on Appeal, pp. 2-5.

At the close of trial, the jury convicted Petitioner of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The trial court subsequently sentenced him to 35 to 50 years imprisonment on the murder conviction, a concurrent term of one and one-half to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims raised in the present petition. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Brown*, No. 251614, 2004 WL 2882769 (Mich. Ct. App. Dec. 14, 2005) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied. *People v. Brown*, 474 Mich. 853, 702 N.W.2d 578 (2005).

Petitioner thereafter submitted his federal habeas petition asserting the following claims as grounds for relief:

I. The prosecution failed to present sufficient evidence to satisfy the constitutional due process standard of guilt beyond a reasonable doubt.

II. Petitioner was denied due process and a fair trial where a key prosecution witness made reference to a polygraph during his testimony.

III.    The trial judge violated Petitioner's right to a fair trial, to confront the complainant, and to present a defense.

IV.    The prosecutor violated Petitioner's state and federal right to a fair trial and usurped the function of the jury by engaging in repeated acts of misconduct.

Respondent has filed an answer to the petition asserting that the claims should be denied for lack of merit and/or based upon procedural default.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

  A. <u>Insufficient Evidence Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions. Respondent contends that this claim lacks merit and does not warrant relief.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to life imprisonment. *See* Mich. Comp. Laws § 750.317. Second-degree murder requires proof that the defendant killed a human being with malice aforethought. To show malice aforethought, the prosecution must establish that the defendant had: (1) the intent to kill; (2) the intent to commit great bodily harm; or (3) the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150 (1984). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). The elements of felon in possession are: (1) that the defendant was convicted of a felony; (2) that the defendant possessed a firearm; and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See* Mich. Comp. Laws § 750.224f. The elements of felony firearm are that the defendant carried or possessed a firearm during the

commission or attempted commission of a felony. *See* Mich. Comp. Laws § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Petitioner's convictions, stating:

> We hold that, viewing the evidence in the light most favorable to the prosecution and drawing all credibility determinations in support of the jury verdict, the evidence was sufficient to support defendant's convictions. Although Chavez and Walker contradicted their prior statements and gave conflicting testimony, the jury apparently found the witnesses credible. At trial, Chavez testified that defendant and Mario Smith exchanged angry words. After this exchange, defendant, wearing a black hooded sweatshirt, got into the driver's seat of a green Grand Am. While Chavez was walking home approximately forty-five minutes later, he saw Mario and Walker one block away, standing at the corner of Chalmers and Frankfort. Chavez saw defendant driving the green Grand Am on Chalmers. Defendant stopped the car and pointed a nickel-plated revolver out the driver's side window at Mario. Chavez heard four to six shots and saw Mario run toward Chandler Park. Chavez' assertion that Mario was shot with a revolver was corroborated by police testimony that no casings were found at the scene. Chavez' depiction of events is also supported by the medical examiner's testimony that there was no evidence of close range firing.
>
> After Chavez was arrested for home invasion, he told the police that defendant shot Mario. Chavez offered an explanation for his delayed reporting of this information: he was no longer scared to come forward because he was locked up and defendant could not get to him. When the police re-interviewed Chavez several months later, Chavez recanted. He told the police that he did not see defendant shoot Mario, but rather, Chavez' cousin's girlfriend told him that she saw the shooting and his girlfriend's father told him that Mario was dead. At trial, Chavez explained that he lied to the police because he was threatened and afraid for his family.
>
> Walker's testimony contained similar inconsistencies and contradicted Chavez' testimony in certain respects. On the night of the shooting, Walker saw a green Grand Am parked outside Skateland. Walker heard a man inside the Grand Am tell Mario to get in the car. Mario refused and the car drove away. Walker walked to a gas station to call his grandmother for a ride home. At the gas station, Walker saw the green Grand Am. When the passenger got out of the car, a gun fell from the pocket of his black hooded sweatshirt. The passenger picked up the gun and put it back in his right front pocket. Walker later identified the passenger wearing the black hooded sweatshirt as defendant.
>
> Walker called his grandmother and arranged to be picked up at Skateland. While walking toward Skateland, Walker saw someone at least a block away from him on Frankfort Street near Chalmers. Walker also saw the green Grand Am traveling

down Frankfort toward Chalmers. A man got out of the passenger seat and shot Mario.

Officer Lonze Reynolds later interviewed Walker. Walker told Reynolds that he did not see Mario get shot and that he only claimed to have witnessed the shooting because he thought it would help Mario. At trial, Walker explained that when he told Reynolds that he did not see Mario get shot, he meant that he did not see where the bullet hit Mario.

Reynolds re-interviewed Walker and showed him a photograph of defendant. Reynolds testified that Walker initially identified defendant as the driver of the green Grand Am. However, at trial, Walker asserted that he did not say that defendant was the driver, but rather, he told the police that defendant was the passenger. Also, Walker told the police that the person with the gun was wearing a red leather jacket. At trial, Walked claimed that he was confused by the officer's questions, but told the police that the person with the gun was wearing a black sweatshirt.

Despite the deficiencies that defendant highlights in Chavez' and Walker's testimony, the jury was presented with all of the evidence and was free to conclude that they were, nonetheless, credible witnesses. *People v. Fletcher*, 260 Mich App 531, 562; 670 NW2d 127 (2004). This Court will not interfere with the jury's role of determining the weight of the evidence or deciding the credibility of witnesses. *Id.* It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v. Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Thus, the credibility issues raised by defendant do not render the evidence insufficient to support the verdict.

*Brown*, 2004 WL 2882769, at *1-2.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The trial testimony of Chavez Smith and Adrian Walker, if believed, demonstrates that Petitioner shot and killed the victim with the requisite intent to support his convictions. The jury was well aware of the inconsistencies in the witnesses' testimony, but nonetheless chose to believe their testimony that Petitioner committed the shooting.

Petitioner's insufficient evidence claim attacks the inferences that the jury drew from evidence at trial and the jury's credibility assessments. Such determinations, however, are not

matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, the Michigan Court of Appeals' decision that a rational trier of fact could find the elements of second-degree murder, felon in possession, and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this issue.

      B.     <u>Polygraph Claim</u>

Petitioner next asserts that he is entitled to habeas relief because a police witness referred to a polygraph examination taken by Chavez Smith. Respondent contends that this claim is barred by procedural default due to Petitioner's failure to object at trial and contends that the claim otherwise lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001); *see also Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

(1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir.1998)). All four parts of the test are met here. The Michigan Court of Appeals rendered the last reasoned opinion on this issue. In dismissing this claim, the court relied upon Petitioner's failure to object at trial. *See Brown*, 2004 WL 2882769, at *2-4. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon a procedural default—the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply

with the state's procedural rule. *Murray*, 477 U.S. at 488. A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988); *Rust*, 17 F.3d at 161. Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Petitioner in this case neither alleges nor establishes cause to excuse this procedural default. The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000).

Nonetheless, the Court notes that Petitioner cannot establish prejudice as this claim lacks merit. The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review. *See Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (citing *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2002); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991)); *see also Poole v. Perini*, 659 F.2d 730, 734-35 (6th Cir. 1981). Furthermore, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). The polygraph reference did not render Petitioner's trial fundamentally unfair. As noted by the Michigan Court of Appeals in reviewing this claim for plain error, the polygraph reference was brief, inadvertent, neutral, and intended to explain the officer's awareness that Chavez had recanted rather than bolster Chavez's credibility, and did not state

results. *See Brown*, 2004 WL 2882769, at *3-4. Petitioner has not shown that he was prejudiced by the police officer's testimony.

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

C.    <u>Letter Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his constitutional rights by refusing to admit an allegedly threatening letter that Petitioner wrote to Chavez. Respondent contends that this claim is barred by procedural default and lacks merit.

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See* discussion *supra*. The Michigan Court of Appeals denied relief on this claim based upon Petitioner's failure to object to the trial court's refusal to admit the letter on constitutional grounds. *See Brown*, 2004 WL 2882769, at *4-5. Petitioner neither alleges nor establishes cause to excuse this default. The Court therefore need not address the issue of prejudice. *See Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289; *Bell*, 114 F. Supp. 2d at 638.

Nonetheless, Petitioner cannot establish prejudice as this claim lacks merit. Petitioner alleges that the trial court's refusal to admit the letter violated his rights to due process, to present

13

a defense, and to confront a witness. To the extent that Petitioner asserts that the trial court erred in applying Michigan evidentiary law, he is not entitled to relief. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh*, 329 F.3d at 512; *Clemmons*, 34 F.3d at 356.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). This right, however, is not unlimited and is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (defendant was denied right to present a defense when he was precluded from cross-examining a key witness and calling three favorable witnesses).

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314. The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the

Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998).

In this case, the trial court's refusal to admit the letter did not render Petitioner's trial fundamentally unfair, nor did the trial court's action violate his right to present a defense or to confront Chavez Smith. As explained by the Michigan Court of Appeals in reviewing this claim for plain error, while the letter was somewhat relevant for evaluating the basis for Chavez's recantation, it tended to support Chavez's assertion that he was threatened by Petitioner via phone calls and letters. More importantly, the trial record reveals that the absence of the letter did not impede Petitioner's ability to effectively cross-examine Chavez and challenge the inconsistencies in his testimony. *See Brown*, 2004 WL 2882769, at *4-5. Petitioner has failed to establish that he was sufficiently prejudiced by the trial court's ruling. He has also failed to establish that a fundamental miscarriage of justice has occurred. *See* discussion *supra*. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant relief.

### D. Prosecutorial Misconduct and Ineffective Assistance of Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief due to prosecutorial misconduct and the ineffectiveness of trial counsel. Specifically, Petitioner claims that the prosecutor engaged in misconduct by vouching for Chavez's credibility, calling Petitioner a liar, and denigrating the defense. Petitioner claims that trial counsel was ineffective for failing to object to the alleged misconduct. Respondent contends that the prosecutorial misconduct claims are barred by procedural default and Petitioner has failed to establish that trial counsel was ineffective.

As previously discussed, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See* discussion

*supra*. The Michigan Court of Appeals denied relief on the prosecutorial misconduct claims based upon Petitioner's failure to object at trial. *See Brown*, 2004 WL 2882769, at *6. Petitioner must therefore establish cause and prejudice to excuse his default, or show that a miscarriage of justice has occurred. Petitioner alleges ineffective assistance of trial counsel as cause to excuse this procedural default.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. *Id.* at 690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Petitioner cannot establish that trial counsel was ineffective or that he was prejudiced so as to excuse his default because his prosecutorial misconduct claims lack merit. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id*. Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor improperly vouched for Chavez Smith's credibility with the use of such phrases as "I believe . . . ." It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs as to a defendant's guilt or to express personal opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10

(1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18 (6th Cir. 2003) (citing cases).

As noted by the Michigan Court of Appeals in reviewing this issue for plain error, while the prosecutor prefaced some comments during arguments with the phrase "I believe..." or similar such phrases, the prosecutor referenced the evidence presented at trial and argued that Chavez was worthy of belief. *See Brown*, 2004 WL 2882769, at *6. The prosecutor's arguments were based upon reasonable inferences from the evidence. A prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not express a personal belief in Petitioner's guilt nor improperly vouch for prosecution witnesses. Rather, the prosecutor argued that Petitioner's guilt had been established beyond a reasonable doubt based upon the evidence. Petitioner has failed to establish that the prosecutor's argument was improper.

Petitioner also claims that the prosecutor called him a liar during closing arguments. As explained by the Michigan Court of Appeals, however, this claim is belied by the record. The prosecutor was really referring to the defense's anticipated attack on Chavez Smith's credibility. *See Brown*, 2004 WL 2882769, at *7. Furthermore, it is well-established that a prosecutor may argue from the facts that a witness, including a defendant, is or is not worthy of belief. *See Portuondo*, 529 U.S. at 69. Petitioner has not shown that the prosecutor's argument was improper.

18

Lastly, Petitioner asserts that the prosecutor denigrated the defense and defense counsel by calling his arguments "laughable and insulting" and by suggesting that defense counsel was attempting to mislead the jury. It is clearly inappropriate for a prosecutor to make personal attacks on opposing counsel. *See, e.g.,United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). A prosecutor, however, may argue reasonable inferences from the evidence. "Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *Id*. A prosecutor may also respond to improper or irrelevant defense arguments. As noted by the Michigan Court of Appeals, many of counsel's comments referenced the evidence and were made in response to defense arguments. *See Brown*, 2004 WL 2882769, at *7. Further, to the extent that some of the prosecutor's comments on defense counsel could be seen as improper, they were not so flagrant as to deprive Petitioner of a fair trial. The remarks, although deliberate, were relatively isolated and not misleading in nature. The prosecution presented eyewitness testimony to establish Petitioner's guilt. Potential prejudice was alleviated by the trial court's instructions, which stated that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, and that the prosecution had the burden of proving guilt beyond a reasonable doubt. *See, e.g., Russ v. Stegall*, No. 99-73476, 2000 WL 791753, at *4 (E.D. Mich. June 8, 2000).

Petitioner has failed to establish that trial counsel was ineffective or that his prosecutorial misconduct claims have merit so as to establish cause and prejudice to excuse his procedural default. Petitioner has also not shown that a fundamental miscarriage of justice has occurred. *See* discussion *supra*. His prosecutorial misconduct claims are thus barred by procedural default and lack merit, as does his ineffective assistance of counsel claim. Habeas relief is not warranted.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims contained in his petition and denies the petition for a writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not find the Court's procedural default rulings debatable. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly;

IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability and leave to proceed on appeal *in forma pauperis* are DENIED.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: November 7, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 7, 2008.


s/Marie E. Verlinde
Case Manager
(810) 984-3290